# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
             **Plaintiff,**

**v.**                                                            **Case No. 06-CR-205**

**ADEJOKE DAVIES-ISOM**
             **Defendant.**

---

## SENTENCING MEMORANDUM

Defendant Adejoke Davies-Isom pleaded guilty to conspiracy to distribute one kilogram or more of heroin, contrary to 21 U.S.C. §§ 841(a)(1) & (b)(1)(A). The probation office prepared a pre-sentence report ("PSR") in anticipation of sentencing, which set defendant's offense level at 27 (base level 32, U.S.S.G. § 2D1.1(c)(4), minus 2 under the safety valve provision, § 2D1.1(b)(9), and minus 3 for acceptance of responsibility, § 3E1.1) and her criminal history category at I, producing an imprisonment range of 70-87 months under the sentencing guidelines.

Neither side objected to the PSR, but defendant requested a non-guideline sentence of 18 months under 18 U.S.C. § 3553(a), while the government advocated a term at the low end of the range. Upon consideration of the arguments of counsel and the entire record, I imposed a sentence of 54 months. In this memorandum, I set forth my reasons.

## I. SENTENCING FACTORS

In imposing sentence, the court considers the factors set forth in 18 U.S.C. § 3553(a):

(1)      the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the advisory guideline range;

(5)     any pertinent policy statements issued by the Sentencing Commission;

(6)     the need to avoid unwarranted sentence disparities; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). The statute directs the court, after considering these factors, to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant.

## II. DISCUSSION

**A.     Nature of Offense**

Defendant supplied heroin to other dealers in southeast Wisconsin and Northern Illinois over the course of about five years, in fairly significant amounts. The parties agreed that the total amount involved was between one and three kilograms. There was no indication that defendant directed others, possessed a weapon, or engaged in or threatened violence, so the offense was not aggravated in that sense. It also appeared that she was cooperative upon

2

arrest and made a statement to the police.  She apparently made additional efforts to cooperate since her arrest.  However, the offense was nonetheless quite serious given defendant's role as a supplier near the top of the distribution chain in this conspiracy.

**B.    Character of Defendant**

Defendant was thirty-five years old, the mother of three young children, one of whom suffers from autism, and a citizen of Nigeria.  Her status in this country was uncertain, as she was apparently awaiting adjustment of status based on her marriage to an American citizen at the time of her arrest.  It was unclear what would happen with that adjustment based on this conviction, but counsel believed that deportation was likely.

Defendant had a solid educational and employment history, graduating from nursing school and working in that field for a few years, before moving into auto sales for the past five years or so.  She had no prior criminal record.

I received numerous letters attesting to defendant's positive character traits, and many supporters appeared at defendant's sentencing.  The letters and those who spoke at sentencing portrayed defendant as someone who was kind and giving, who helped her diabetic mother with her health issues and was a good mother to her own children, who encouraged her relatives to complete their education, and sent money back to Nigeria.  I also received a letter from a representative of Wisconsin Lutheran Institutional Ministries, who indicated that defendant regularly attended Bible study at the jail in which she was detained and was a compassionate and respectful person.  A former inmate at the jail spoke at sentencing, indicating that defendant was a wonderful person who had taught her a lot and encouraged her to do more with her life.  A representative of the Benedict Center, which provides programming for female inmates at the jail, also appeared in support.  In sum, defendant presented an

Case 2:06-cr-00205-LA   Filed 03/12/07   Page 3 of 8   Document 105

impressive amount of positive character evidence and had obviously touched the lives of many.

I did not doubt the sentiments expressed in the letters and at sentencing, and they merited consideration. Under § 3553(a)(1), the court must consider the entire background of the defendant, not just her worst moments. See, e.g., United States v. Terry, 427 F. Supp. 2d 1132, 1138 (M.D. Ala. 2006). What a person did with her life prior to committing a crime should count for something, and there were significant positives in this case. Nevertheless, it was difficult to square defendant's positive character traits with her extensive and serious criminal conduct.

## C.  Purposes of Sentencing

I did not believe that defendant was dangerous or, given her lack of record, a particular risk of recidivism. However, there was a need for a substantial period of confinement to provide just punishment, given the damage drugs – and this particular drug – cause to the community and to deter others. As the AUSA noted at sentencing, heroin use devastates communities and families, and creates many victims. Defendant apparently had some substance abuse issues herself, reporting use of marijuana, cocaine and alcohol. However, given the needs for punishment and deterrence, I had to address those issues by recommending programming through the Bureau of Prisons, at least initially.

## D.  Guidelines

The guidelines recommended a sentence of 70-87 months. Based on the positive character evidence presented and defendant's relatively low risk of recidivism, I found a sentence slightly below that range sufficient to satisfy the purposes of sentencing.

Defendant requested a sentence of 18 months, but that would have been insufficient.

4

Defendant pointed to her educational and vocational accomplishments, family ties, lack of record and remorse. I agreed that those factors were relevant, but they were accounted for to some extent by the guidelines, given the reductions for safety valve and acceptance of responsibility. To the extent they were not, I took them into account.

Defendant argued that she involved herself in the offense because of her own substance abuse, but I did not really see the connection. Defendant reported a cocaine and marijuana problem, yet she was selling heroin. I see many cases in which addicts involve themselves in drug conspiracies in order to feed their habits, but this case did not fit that pattern. Defendant was a supplier, not a lower level functionary, and she sold a drug different from the one to which she was supposedly addicted. Further, the evidence of defendant's strong work ethic and family responsibilities did not really jibe with the claim that she was an addict pushed into distribution to feed her habit.

Defendant also asked me to consider the impact of the sentence on her children, particularly her autistic son. There clearly are cases where a below-guideline sentence is warranted to counter the adverse effects to a defendant's family. See, e.g., United States v. Husein, No. 05-2548, 2007 U.S. App. LEXIS 4779 (6th Cir. Mar. 2, 2007); United States v. Manasrah, 347 F. Supp. 2d 634 (E.D. Wis. 2004). However, I did not really see this as being such a case. Both sides agreed that the crime required a substantial prison sentence in order to provide just punishment. Thus, defendant was going to be separated from her family for a significant period of time. She had already been detained for about six months at the time of sentencing, which required her mother and sister to care for her children. There was no evidence that they could not continue to do so. I did not doubt that there were difficulties, particularly with the disabled child, but it appeared that he went to a special school, and that

5

the family had the resources and ability to meet his and the other children's needs. Of course, a parent is the optimal situation, but no result I could produce in this case would be optimal given the seriousness of this crime and the need to punish it. There was also the specter of deportation upon completion of defendant's sentence. Defendant's niece indicated that defendant would likely take the children with her back to Nigeria, but I was uncertain. Maybe that would happen, maybe it would not. The bottom line was that no reasonable sentence I could impose would re-unite defendant with her family in the near future, and it was possible that she could be separated from them in the long term as well due to her immigration status.

A plea for mercy from a defendant-parent also presents something of a double edged sword. There is a natural inclination to want to help a defendant's children, to avoid punishing them for their parent's misdeeds. But in considering the culpability of the defendant, I can see parenthood as an aggravating factor. If defendant truly cared for her children, one would think she would not risk their future by committing such a serious crime and would spend her free time with them, not supplying drug dealers. A parent has more to lose, and the deterrent to avoid crime should, for them, be stronger. There was also no evidence in this record that defendant turned to dealing to make ends meet. She had significant vocational skills, and it appeared that she had funds from legitimate sources to support her family. I frankly could not understand, given what she had to lose, her significant responsibilities, and the other positives in her life, why defendant got involved in this activity, and at such a high level.

Defendant further asked me to consider the probability of deportation, which would have an additional adverse effect on her and her children. I can under § 3553(a) consider the added punitiveness of collateral consequences, such as deportation. See United States v. Pacheco-Soto, 386 F. Supp. 2d 1198, 1204-05 (D.N.M. 2005); see also United States v.

6

Wachowiak, 412 F. Supp. 2d 958, 963-64 (E.D. Wis. 2006). In this case, I did not doubt that deportation, if it came to pass, would pose a further hardship. However, it was one that defendant largely brought upon herself by her conduct. Further, I did not know for sure if deportation would, in fact, occur. Therefore, while this factor warranted some consideration, I did not give it great weight.

Lastly, defendant asked me to consider her efforts to cooperate. The court may consider a defendant's attempt to cooperate as a sign of positive character development under § 3553(a), see United States v. Fernandez, 443 F.3d 19, 33 (2d Cir.), cert. denied, 127 S. Ct. 192 (2006), but in this case defendant received a 2 level reduction under the safety valve provision based in part on her provision of information,[1] in addition to the 3 level reduction for acceptance of responsibility, plus the option of receiving a sentence below the otherwise applicable ten year mandatory minimum. Thus, her efforts were not ignored in the guideline determination. Further, defendant provided little information on the nature and extent of her efforts. Finally, the government held open the possibility that defendant would be the beneficiary of a Fed. R. Crim. P. 35(b) motion in the future, if her information proved useful. Thus, this factor merited minimal consideration.

Therefore, while I found a sentence somewhat below the range sufficient, the defense arguments for a significantly below guideline sentence were unpersuasive.

---

[1]In order to receive the safety valve reduction, the defendant must truthfully provide to the government all information and evidence she has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. The fact that the defendant has no relevant or useful information to provide or that the government is already aware of the information does not preclude the court from finding the defendant safety valve eligible. U.S.S.G. § 5C1.2(a)(5).

### III. CONCLUSION

Under all of the circumstances, I found a sentence of 54 months sufficient but not greater than necessary. I believed that this sentence accounted for the significant positives in defendant's character, her expression of remorse and cooperation, and her relatively low risk of recidivism, while still providing for just punishment and deterrence. Because it varied modestly from the guidelines and was based on the particular facts of the case, it did not create unwarranted disparity. Other conditions of the sentence appear in the judgment.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2007.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

8